FILED
2015 Sep-10  PM 01:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | |
|---|---|
| **SLAYTON LEE MAGOUIRK** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **Civil Action No.: 1:15-cv-1519-VEH** |
| **v.** | ) |
| | ) *Jury Trial Demanded* |
| **ROUGH COUNTRY, LLC, f/k/a** | ) |
| **HECKETHORN PRODUCTS,** | ) |
| **INC. d/b/a ROUGH COUNTRY** | ) |
| **SUSPENSION SYSTEMS and/or** | ) |
| **ROUGH COUNTRY** | ) |

## AMENDED COMPLAINT

COMES NOW the Plaintiff, Slayton Lee Magouirk, an individual, by and through his undersigned counsel of record, and hereby amends his Complaint pursuant to this Honorable Court's September 3, 2015 Order (Doc. 2), and shows unto the Court the following:

## PARTIES

1.     The Plaintiff, Slayton Lee Magouirk, is an individual over the age of nineteen (19) and is a resident and citizen of Calhoun County, Alabama.

2.     Defendant Rough Country, LLC, formerly known as Heckethorn Products, Inc. d/b/a Rough Country Suspension Systems and/or Rough Country ("Rough Country") is a Delaware limited liability company with its principal place of business in Tennessee, and does business throughout the United States,

including the State of Alabama, for profit. Upon inquiry to the Secretary of State of Tennessee, according to Rough Country's most recent filing of its Tennessee Limited Liability Company Annual Report form filed March 31, 2015, as required by Tennessee law, Ken Dunn is identified as Rough Country's sole member and is a resident and citizen of the State of Tennessee. (*See* Exhibit 1) Your Plaintiff avers, therefore, that there is complete diversity.

## JURISDICTION and VENUE

3.      This Court has diversity jurisdiction over the claims in this complaint according to 28 U.S.C. §1332(a)(1) as the amount in controversy exceeds the sum or value of $75,000.00 and is between citizens of different states.

4.      Venue is proper in this Court, as the injuries sustained by the Plaintiff occurred in Calhoun County, Alabama and were committed within the Northern District of Alabama.  28 U.S.C. §1391.

## STATEMENT OF THE FACTS

5.      On or about October 8, 2013, the Plaintiff, Slayton Lee Magouirk, was the front seat passenger in a 1997 Chevrolet Z71 pickup truck (the "subject vehicle") being driven south on Nunnally Lake Road in Calhoun County, Alabama. At the time of the incident made the basis of this complaint, the subject vehicle was equipped with a Rough Country, six-inch suspension lift kit (the "subject lift

kitö) and oversized tires.  At the aforesaid time and place, the driver of the subject vehicle was caused to make a foreseeable emergency steering maneuver that caused the subject vehicle to partially leave the roadway on the right-hand shoulder.  As the driver steered the subject vehicle back onto the roadway, the truck rotated clockwise and began to overturn while on the roadway.  The subject vehicle overturned several times before coming to final rest on the right-hand shoulder of the roadway.  During the rollover sequence, the Plaintiff was ejected from the subject vehicle, resulting in his severe, permanent and disabling injuries.

6.     The subject lift kit was designed, developed, manufactured, marketed, distributed, and sold by Rough Country.  At the time of the occurrence made the basis of this lawsuit, the subject lift kit was in substantially the same condition as it was when manufactured and sold by Rough Country.

7.     At all material times, the subject lift kit was being used for the purpose and in the manner for which it was designed and sold.  The said lift kit was not reasonably safe when being so used in a foreseeable manner but, to the contrary, was defective and unreasonably dangerous when being so used.  The Defendant knew, or in the exercise of reasonable care should have known, that said lift kit was unreasonably dangerous to the human body when being so used in a foreseeable manner.

8.      As a direct and proximate consequence of the Defendant's wrongful conduct, the Plaintiff (a) has sustained serious, severe, permanent, devastating, and disabling injuries including, but not limited to the loss of use of his left leg; (b) has incurred various medical bills in an effort to cure his injuries in the past and will continue to do so in the future; (c) has suffered physical pain in the past and will continue to do so in the future; (d) has suffered great mental anguish, annoyance, and embarrassment in the past and will continue to do so in the future; (e) has lost earning capacity for the future; (g) has lost quality of life in the past and will continue to do so in the future; (h) has lost wages, benefits, and other income in the past and will continue to do so in the future; and (i) has suffered other damages.

## COUNT ONE
## ALABAMA EXTENDED MANUFACTURER'S LIABILITY DOCTRINE

9.      The Plaintiff adopts and realleges paragraphs 1 through 8 as previously set forth in this complaint as if fully set out herein.

10.     The Plaintiff avers that the subject Rough Country six-inch suspension lift kit made the basis of this action was defective and unreasonably dangerous.  As a result thereof, the Plaintiff prosecutes this claim pursuant to the Alabama Extended Manufacturer's Liability Doctrine.

11.     Prior to the occurrence made the basis of this complaint, Rough Country was engaged in the business of designing, developing, manufacturing,

4

furnishing, selling and/or distributing lift kits, including the subject lift kit, throughout the United States for use by the general public.  Rough Country, during said period of time and for valuable consideration designed, manufactured, furnished, sold and/or distributed the subject lift kit that caused the severe, permanent and disabling injuries sustained by the Plaintiff.

12.    At the aforesaid time and place, the subject lift kit, which was in substantially the same condition as when manufactured, furnished, sold and/or distributed, was being used in a manner that was foreseeable and intended.  The subject lift kit was not reasonably safe when being used in a foreseeable and intended manner, but, to the contrary, was defective and unreasonably dangerous to the human body when being so used.  Specifically, the subject lift kit created an unreasonable and dangerous propensity for vehicles on which it was mounted to roll over under normal and foreseeable circumstances.  Rough Country knew, or in the exercise of reasonable care should have known, that the subject lift kit was unreasonably dangerous to the human body when being so used in a foreseeable manner.

13.    The subject lift kit and its component parts were in a defective and unreasonably dangerous condition at the time of the occurrence made the basis of this complaint in that:

    (a)    The subject lift kit was improperly designed from a handling and stability standpoint, thereby creating an unreasonably

dangerous propensity for vehicles to roll over under normal and foreseeable operating conditions;

(b)     The subject lift kit and its component parts were defective in design, manufacture, assembly and warnings because they failed to provide adequate directional and dynamic stability when being operated as intended, advertised and marketed, creating an unreasonably dangerous propensity to roll over under foreseeable operating conditions, and was furnished without adequate warnings regarding stability and use;

(c)     The subject lift kit and its component parts were defective due to the Defendant's failure to test or adequately test the subject lift kit and its component parts to ensure they were reasonably safe and suitable for their intended purpose and use, provide adequate stability and control, and not substantially increase a vehicle's propensity to roll over in foreseeable and normal operating conditions;

(d)     The subject lift kit and its component parts were defective due to inadequate or absent warnings and/or proper notice to alert suppliers and users regarding the hazardous conditions of the subject lift kit, as herein described, involving their use and operation;

(e)     The subject lift kit and its component parts were defective in design, manufacture and assembly in that it increased the center of gravity and altered the static stability factor of vehicles on which it was installed, thus increasing the vehicle's rollover propensity under foreseeable operating conditions;

(f)     The subject lift kit was generally defective in its design, manufacture, testing, marketing, assembly and warnings.

14.     The unreasonably dangerous nature of the defects and conditions described above created a high probability that the subject lift kit would be involved and is involved in rollover incidents and that from a handling and stability standpoint would not provide operators and passengers of vehicles on which the

subject lift kit would be mounted with a reasonably safe product when used in a manner for which it was designed and intended, resulting in the loss of human life and/or severe and permanent personal injuries.  Rough Country knew, or in the exercise of reasonable care, should have known of the risks associated with the use and operation of the subject lift kit prior to production and marketing of the subject lift kit.  The aforesaid defects in the subject lift kit were not known to the Plaintiff and were not discoverable through reasonable inspection.

15.    The incident made the basis of this lawsuit was caused by the defective handling and stability characteristics of the subject lift kit.  During the rollover incident, the Plaintiff was ejected from the subject vehicle, sustaining severe, permanent and disabling injuries, including the loss of use of his left leg.

16.    The unreasonably dangerous and defective condition of the subject lift kit was a proximate cause of the severe, permanent and disabling injuries sustained by the Plaintiff, and renders Rough Country liable to the Plaintiff pursuant to the Alabama Extended Manufacturer's Liability Doctrine.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff asks that the jury selected to hear this case render a verdict for the Plaintiff and against the Defendant for compensatory damages in an amount which will adequately compensate the Plaintiff for the injuries and damages sustained by him due to the Defendant's conduct; and for exemplary damages in an amount which will

adequately reflect the wrongfulness of the Defendant's conduct and to prevent such conduct in the future by the Defendant or others similarly situated. Further, the Plaintiff requests that the Court enter judgment consistent with the jury's verdict and that it award the Plaintiff interest from the date of judgment and all costs incurred in prosecution of this claim.

## COUNT TWO
## NEGLIGENCE

17.    The Plaintiff adopts and realleges paragraphs 1 through 16 as previously set forth in this complaint as if fully set out herein.

18.    Rough Country negligently designed, developed, engineered, manufactured, assembled, tested or failed to test, inspected or failed to inspect, marketed, furnished, sold and/or distributed the subject lift kit involved in the incident made the basis of Plaintiff's complaint, and said negligent conduct was the proximate cause of the severe, permanent and disabling injuries sustained by the Plaintiff.

19.    At the time Rough Country designed, developed, manufactured, engineered, tested or failed to test, marketed, inspected or failed to inspect, distributed and/or sold the subject lift kit, it had a duty to exercise reasonable care in order to provide a safe product and to design, manufacture, engineer, test, inspect, market, distribute and sell the product so as not to subject occupants of

vehicles on which the lift kit was mounted to an unreasonably risk of injury or harm.  Further, Rough Country had a duty to foreseeable operators and passengers of vehicles on which the subject lift kit was mounted to exercise the same degree of care, diligence and skill in designing, testing, inspecting, manufacturing, marketing and selling the subject lift kit as other similar entities would have exercised.

20.     Rough Country breached its duties as it unreasonably designed, tested or failed to test, manufactured, warned or failed to warn, marketed and sold the subject lift kit and its component parts, specifically in that Rough Country knew or should have known that:

(a)     The subject lift kit was negligently designed from a handling and stability standpoint, thereby creating an unreasonably dangerous propensity for vehicles to roll over under normal and foreseeable operating conditions;

(b)     The subject lift kit and its component parts were defective in design, manufacture, assembly and warnings, because they failed to provide adequate directional and dynamic stability when being operated as intended, advertised and marketed, creating an unreasonably dangerous propensity to roll over under foreseeable operating conditions, and was furnished without adequate warnings regarding stability and use;

(c)     The subject lift kit and its component parts were defective due to the Defendant's failure to test or adequately test the subject lift kit and its component parts to ensure they were reasonably safe and suitable for their intended purpose and use, provide adequate stability and control, and not substantially increase a vehicle's propensity to roll over in normal and foreseeable operating conditions;

9

(d)     The subject lift kit and its component parts were defective due to inadequate or absent warnings and/or proper notice to alert suppliers and users regarding the hazardous conditions of the subject lift kit, as herein described, involving their use and operation;

(e)     The subject lift kit and its component parts were defective in design, manufacture and assembly in that it increased the center of gravity and altered the static stability factor of vehicles on which it was installed, thus increasing the vehicle's rollover propensity under foreseeable operating conditions;

(f)     The subject lift kit was generally defective in its design, manufacture, testing, marketing, assembly and warnings.

21.     The aforesaid defects were not inherent characteristics of the subject lift kit and could have been eliminated without compromising its usefulness and desirability.

22.     By negligently designing, testing or failing to test, manufacturing, marketing and selling the subject lift kit, Rough Country failed to use that degree of care, diligence and skill as other similar entities in that it failed to conduct adequate testing and to adopt safer, practical, feasible and otherwise reasonable alternative designs that could have been reasonably adopted and would have prevented or reduced the Plaintiff's injuries without substantially impairing the usefulness, practicality, or desirability of the subject lift kit and its component parts.

23.     The negligent conduct of Rough Country was a proximate cause of the severe, permanent and disabling injuries sustained by the Plaintiff, including the loss of use of his left leg.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff asks that the jury selected to hear this case render a verdict for the Plaintiff and against the Defendant for compensatory damages in an amount which will adequately compensate the Plaintiff for the injuries and damages sustained by him due to the Defendant's conduct; and for exemplary damages in an amount which will adequately reflect the wrongfulness of the Defendant's conduct and to prevent such conduct in the future by the Defendant or others similarly situated. Further, the Plaintiff requests that the Court enter judgment consistent with the jury's verdict and that it award the Plaintiff interest from the date of judgment and all costs incurred in prosecution of this claim.

## COUNT THREE
## NEGLIGENT FAILURE TO WARN

24.     The Plaintiff adopts and realleges paragraphs 1 through 23 as previously set forth in this complaint as if fully set out herein.

25.     Rough Country, as the designer manufacturer, seller and/or distributor of the subject lift kit and it component parts, had a duty to foreseeable operators and passengers of vehicles on which the subject lift kit would be mounted to

exercise the same degree of care, diligence and skill to adequately warn and/or instruct them about the hazards and dangerous conditions related to the use and operation of the subject lift kit in its intended manner as other manufacturers and distributors would have exercised.  Specifically, Rough Country failed to warn operators and passengers of vehicles on which the subject lift kit would be mounted of the unreasonably and dangerous propensity to roll over under normal and foreseeable operating conditions.  Rough Country negligently failed to warn of the dangers associated with the use and operation of the subject lift kit and such negligent conduct was a proximate cause of the severe, permanent and disabling injuries sustained by the Plaintiff, including the loss of use of his left leg.

26.    Rough Country was in a position superior to that of the Plaintiff to be aware of the dangerous and defective condition of the subject lift kit, as set forth herein.  Thus, Rough Country had an obligation to inform operators and passengers of vehicles on which the subject lift kit would be mounted, including the Plaintiff, of these defects.  Further, Rough Country had a superior opportunity to inspect the subject lift kit and become aware of its defects over and above the Plaintiff.  The absence of adequate warnings and instructions created an unreasonably dangerous condition and risk to foreseeable operators and passengers of vehicles on which the subject lift kit would be mounted that the Defendant knew or should have known about in the exercise of ordinary care.  Rough Country breached said duty, and

negligently failed to warn the Plaintiff of the defective condition of the subject lift kit.

27.     The negligent conduct of Rough Country in failing to warn of the defective condition of the subject lift kit was a proximate cause of the severe, permanent and disabling injuries sustained by the Plaintiff, including the loss of use of his left leg.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff asks that the jury selected to hear this case render a verdict for the Plaintiff and against the Defendant for compensatory damages in an amount which will adequately compensate the Plaintiff for the injuries and damages sustained by him due to the Defendant's conduct; and for exemplary damages in an amount which will adequately reflect the wrongfulness of the Defendant's conduct and to prevent such conduct in the future by the Defendant or others similarly situated. Further, the Plaintiff requests that the Court enter judgment consistent with the jury's verdict and that it award the Plaintiff interest from the date of judgment and all costs incurred in prosecution of this claim.

## COUNT FOUR
## WANTONNESS

28.     The Plaintiff adopts and realleges paragraphs 1 through 27 as previously set forth in this complaint as if fully set out herein.

13

29.    Rough   Country   wantonly   designed,   developed,   engineered, manufactured, assembled, tested or failed to test, inspected or failed to inspect, marketed, furnished, sold and/or distributed the subject lift kit involved in the incident made the basis of Plaintiff's complaint, and said wanton conduct was a proximate cause of the severe, permanent and disabling injuries sustained by the Plaintiff.

30.    At the time Rough Country designed, developed, manufactured, engineered, marketed, distributed and/or sold the subject lift kit, it had a duty to exercise reasonable care in order to provide a safe product and to manufacture, design, engineer, test, inspect, market, distribute and sell the product so as not to subject operators and passengers of vehicles on which the subject lift kit was mounted to an unreasonably risk of injury or harm.  Further, Rough Country had a duty to foreseeable operators and passengers of vehicles on which the subject lift kit would be mounted to exercise the same degree of care, diligence and skill in designing, testing, inspecting, manufacturing, marketing and selling the subject lift kit as other similar entities would have exercised.

31.    Rough Country breached its duties by willfully and wantonly designing, testing or failing to test, manufacturing, marketing, and selling the subject vehicle and its component parts in an unreasonably dangerous and defective condition.  Specifically, the Defendant knew or should have known that:

14

(a)     The subject lift kit was improperly designed from a handling and stability standpoint, thereby creating an unreasonably dangerous propensity for vehicles to roll over under normal and foreseeable operating conditions;

(b)     The subject lift kit and its component parts were defective in design, manufacture, assembly and warnings, because they failed to provide adequate directional and dynamic stability when being operated as intended, advertised and marketed, creating an unreasonably dangerous propensity to roll over under foreseeable operating conditions, and was furnished without adequate warnings regarding stability and use;

(c)     The subject lift kit and its component parts were defective due to the Defendant's failure to test or adequately test the subject lift kit and its component parts to ensure they were reasonably safe and suitable for their intended purpose and use, provide adequate stability and control, and not substantially increase a vehicle's propensity to roll over in normal and foreseeable operating conditions;

(d)     The subject lift kit and its component parts were defective due to inadequate or absent warnings and/or proper notice to alert suppliers and users regarding the hazardous conditions of the subject lift kit, as herein described, involving their use and operation;

(e)     The subject lift kit and its component parts were defective in design, manufacture and assembly in that it increased the center of gravity and altered the static stability factor of vehicles on which it was installed, thus increasing the vehicle's rollover propensity under foreseeable operating conditions;

(f)     The subject lift kit was generally defective in its design, manufacture, testing, marketing, assembly and warnings.

32.     The aforesaid defects were not inherent characteristics of the subject lift kit and could have been eliminated without compromising its usefulness and desirability.

33.    By willfully and wantonly designing, testing or failing to test, manufacturing, marketing, selling and/or distributing the subject lift kit, the Defendant failed to use that degree of care, diligence and skill as other similar entities would have used because it failed to adequately test the subject lift kit and its component parts and failed to adopt safer, practical, feasible and otherwise reasonable alternative designs that could have been reasonably adopted and would have prevented or reduced the Plaintiff's injuries without substantially impairing the usefulness, practicality or desirability of the subject lift kit and its component parts.

34.    As a proximate result of the Defendant's willful and wanton conduct, Plaintiff suffered severe, permanent and disabling injuries.  The willful and wanton conduct of Rough Country was done with a conscious disregard and reckless indifference for the lives, safety and protection of the operators and passengers of vehicles on which the subject lift kit would be mounted, including the Plaintiff, with knowledge that harm to occupants of vehicles on which the subject lift kit was mounted would likely or probably result.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff asks that the jury selected to hear this case render a verdict for the Plaintiff and against the Defendant for compensatory damages in an amount which will adequately compensate the Plaintiff for the injuries and damages sustained by him due to the

Defendant's conduct; and for exemplary damages in an amount which will adequately reflect the wrongfulness of the Defendant's conduct and to prevent such conduct in the future by the Defendant or others similarly situated. Further, the Plaintiff requests that the Court enter judgment consistent with the jury's verdict and that it award the Plaintiff interest from the date of judgment and all costs incurred in prosecution of this claim.

## COUNT FIVE
## WANTON FAILURE TO WARN

35.     The Plaintiff adopts and realleges paragraphs 1 through 34 as previously set forth in this complaint as if fully set out herein.

36.     Rough Country, as the designer, manufacturer, seller and/or distributor of the subject lift kit and its component parts, had a duty to foreseeable operators and passengers of vehicles on which the subject lift kit would be mounted to exercise the same degree of care, diligence and skill to adequately warn and/or instruct them about the hazards and dangerous conditions related to the use and operation of the subject lift kit in its intended manner as other manufacturers and distributors would have exercised.  Specifically, Rough Country failed to warn operators and passengers of vehicles on which the subject lift kit would be mounted of the unreasonably dangerous propensity to roll over under normal and foreseeable operating conditions.  Rough Country wantonly failed to

17

warn of the dangers associated with the use and operation of the subject lift kit and such willful and wanton conduct was a proximate cause of the severe, permanent and disabling injuries sustained by the Plaintiff.

37.     Rough Country was in a position superior to that of the Plaintiff to be aware of the dangerous and defective condition of the subject lift kit, as set forth herein.  Rough Country had an obligation to inform operators and passengers of vehicles on which the subject lift kit would be mounted, including the Plaintiff, of these defects.  Further, Rough Country had a superior opportunity to inspect the subject lift kit and become aware of its defects over and above the Plaintiff.  The absence of adequate warnings and instructions created an unreasonably dangerous condition and risk to foreseeable operators and passengers of vehicles on which the subject lift kit would be mounted that the Defendant knew or should have known about in the exercise of ordinary care.

38.     The willful and wanton conduct of Rough Country in failing to warn of the defective condition of the subject lift kit was a proximate cause of the severe, permanent and fatal injuries sustained by the Plaintiff.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff asks that the jury selected to hear this case render a verdict for the Plaintiff and against the Defendant for compensatory damages in an amount which will adequately compensate the Plaintiff for the injuries and damages sustained by him due to the

18

Defendant's conduct; and for exemplary damages in an amount which will adequately reflect the wrongfulness of the Defendant's conduct and to prevent such conduct in the future by the Defendant or others similarly situated. Further, the Plaintiff requests that the Court enter judgment consistent with the jury's verdict and that it award the Plaintiff interest from the date of judgment and all costs incurred in prosecution of this claim.

## COUNT SIX
## BREACH OF WARRANTY

39.     The Plaintiff adopts and realleges paragraphs 1 through 38 previously set forth in this complaint as if fully set out herein.

40.     Rough Country impliedly warranted that the subject lift kit was reasonably fit and suitable for the purpose for which it was intended to be used. Plaintiff avers that Rough Country breached said implied warranties in that the subject lift kit was not reasonably fit and suitable for the purposes for which it was intended to be used but, to the contrary, the subject lift kit was in a dangerously defective and unsafe condition, as described herein.  The Plaintiff further avers that as a proximate result of the aforesaid breach of warranties by Rough Country, the Plaintiff sustained severe, permanent and disabling injuries.

41.     The aforesaid wrongful conduct of Rough Country proximately caused the severe, permanent and disabling injuries sustained by the Plaintiff.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff asks that the jury selected to hear this case render a verdict for the Plaintiff and against the Defendant for compensatory damages in an amount which will adequately compensate the Plaintiff for the injuries and damages sustained by him due to the Defendant's conduct; and for exemplary damages in an amount which will adequately reflect the wrongfulness of the Defendant's conduct and to prevent such conduct in the future by the Defendant or others similarly situated. Further, the Plaintiff requests that the Court enter judgment consistent with the jury's verdict and that it award the Plaintiff interest from the date of judgment and all costs incurred in prosecution of this claim.

Respectfully submitted,

/s/George A. Monk
George A. Monk (ASB-8670-N58G)
P.O. Box 2569
Anniston, Alabama 36202
Telephone ó (256) 238-8668
Facsimile ó (256) 238-8368
monklaw@cableone.net


/s/Thomas P. Willingham
Thomas P. Willingham (ASB-3814-A63T)
Mary Leah Miller (ASB-8567-Y67S)
Law Offices of Thomas P. Willingham, P.C.
3800 Colonnade Parkway, Suite 330
Birmingham, Alabama 35243
Telephone ó (205) 298-1011
Facsimile ó (205) 298-1012

20

tom@tpwpc.com
maryleah@tpwpc.com

*Attorneys for the Plaintiff*

## JURY DEMAND

The Plaintiff hereby demands a trial by struck jury for all issues involved in this cause of action.

/s/Thomas P. Willingham
Thomas P. Willingham
Attorney for the Plaintiff

## **DEFENDANT WILL BE SERVED BY CERTIFIED MAIL AS FOLLOWS:**

Rough Country, LLC
c/o Carrie Newsom
1400 Morgan Road
Dyersburg, Tennessee, 38204




B0080-3663 03/31/2015 2:59 PM Received by Tennessee Secretary of State Tre Hargett

04925714



## Tennessee Limited Liability Company Annual Report Form

AR Filing #: 04925714
FILED: Mar 31, 2015 2:59PM

File online at:  http://TNBear.TN.gov/AR

Due on/Before:04/01/2015          Reporting Year: 2014

**Annual Report Filing Fee Due:**
$300 minimum plus $50 for each member over 6 to a maximum of $3000
$20 additional if changes are made in block 3 to the registered agent/office

This Annual Report has been successfully paid for and filed. Please keep this report for your records.

**Payment-Credit Card  -  State Payment Center - CC #: 161578194**

**SOS Control Number:**  702981
Limited Liability Company - Foreign          Date Formed:  11/30/2012          Formation Locale:  DELAWARE

**(1) Name and Mailing Address:**
Rough Country, LLC
1400 MORGAN RD
DYERSBURG, TN  38024-2339

**(2) Principal Office Address:**
1400 MORGAN RD
DYERSBURG, TN  38024-2339

**(3) Registered Agent (RA) and Registered Office (RO) Address:**
CARRIE NEWSOM
1400 MORGAN RD
DYERSBURG, TN  38024-2339

Agent Changed:  _No_
Agent County:  DYER COUNTY

(4) This LLC is (change if incorrect): ____Director Managed, ____Manager Managed, _X_ Member Managed, ____Board Managed, ____Other.

If board, director, or manager managed, provide the names and business addresses, including zip codes, of the governors, directors, or managers (or their equivalent). If governed by the pre-2006 LLC act and board managed, list board members and managers.

| Name | Business Address | City, State, Zip |
|------|------------------|------------------|
|      |                  |                  |
|      |                  |                  |
|      |                  |                  |

(5) Provide the names and business addresses, including zip codes, of any LLC Officers (if governed by the Revised LLC Act), or their equivalent.

| Name | Business Address | City, State, Zip |
|------|------------------|------------------|
| Ken Dunn | 1400 MORGAN ROAD | DYERSBURG, TN 38024 |
|      |                  |                  |
|      |                  |                  |

(6) Number of members on the date the annual report is executed:  _1_
____This LLC is prohibited from doing business in Tennessee (check if applicable)

(7) Signature:  Electronic

(8) Date: 03/31/2015

(9) Type/Print Name:  Carrie O Newsom

(10) Title:  Controller

SS-4253                          Page 1 of 1                          RDA 1678

**PLAINTIFF'S EXHIBIT**
tabbies